Citation Nr: 1761217 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 12-10 418 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a skin disorder, to include residuals of squamous cell carcinoma of the chest, urticarial, rosacea, hives, and/or actinic keratosis, and to include as secondary to service-connected alopecia universalis and/or contaminated water at Camp Lejeune. 

2. Entitlement to service connection for headaches, to include as secondary to contaminated water at Camp Lejeune. 

3. Entitlement to service connection to vertigo, to include as secondary to service connected alopecia universalis, otitis externa, and/or contaminated water at Camp Lejeune. 

4. Entitlement to service connection for a psychiatric disorder, including depression, to include as secondary to service-connected disabilities. 

REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse (the appellant)


ATTORNEY FOR THE BOARD

Y. Lee, Associate Counsel


INTRODUCTION

The Veteran had honorable active duty with the United States Marine Corps from July 1953 to July 1956, including service at Camp Lejeune after August 1, 1953. The Veteran died in May 2017 during the pendency of the appeal. The Veteran's surviving spouse is the appellant; she has been accepted as the Veteran's substitute for purposes of processing this appeal to completion. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2010 and August 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In February 2012, the Veteran and the appellant testified at a hearing before a Decision Review Officer (DRO). In October 2016, the Veteran and the appellant testified at another hearing before the Board. Transcripts of those hearings have been associated with the appellant's electronic claims file. 

Thereafter, in March 2017, the Board remanded the claims currently on appeal for further development. The matter is now before the Board again. 

The Board notes that a cause of death claim was filed in July 2017 by the appellant, the Veteran's surviving spouse. A July 2017 rating decision denied service connection for cause of death. At this time, the appellant has not filed a notice of disagreement in response to the July 2017 rating decision. As the appellant has not perfected an appeal to the Board, the issue of service connection for the Veteran's cause of death is not presently before the Board. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.



REMAND

As previously indicated, the Board remanded the issues currently on appeal in March 2017, and instructed the AOJ to perform further development and examinations before issuing a Supplemental Statement of the Case (SSOC) readjudicating the Veteran's claims. While the Veteran passed away before much of the development was able to be completed, his death did not negate the fact that the case was previously remanded with instructions to the AOJ, including to readjudicate the claims in an SSOC. A review of the record does not show that this has been completed. An attempt to comply with the Board's March 2017 remand directives should be made and an SSOC needs to be issued before the Board can readjudicate these claims. Specifically, the AOJ is requested to obtain supplemental VA medical opinions for each of the claimed conditions. 

Accordingly, the case is REMANDED for the following action:

1. The RO should attempt to comply with the March 2017 Board remand directives, to the extent possible. As specified in the body of the remand above, the RO should obtain supplemental VA medical opinions for each of the claimed conditions as outlined below. 

2. Obtain a supplemental VA medical opinion to determine the etiology of the Veteran's skin disorder, to include residuals of squamous cell carcinoma of the chest, urticarial, rosacea, hives, and/or actinic keratosis. The claims file should be provided to the examiner. The examiner is asked to provide an opinion as to the following: 

(a) Identify all skin disorders associated with the Veteran. 

(b) Is it at least as likely as not (50 percent or greater probability) that any identified skin disorder, to specifically include residuals of squamous cell carcinoma of the chest, urticarial, rosacea, hives, and/or actinic keratosis, manifested during, or as a result of, active military service, to include exposure to contaminants in the water supply at Camp Lejeune? 

(c) Is it at least as likely as not (50 percent or greater probability) that any identified skin disorder was caused by or aggravated by the Veteran's service-connected alopecia universalis or otitis externa disabilities, and/or the combined effects of those disabilities? 

If aggravation of the Veteran's skin disorder by his service-connected disabilities is found, the examiner must attempt to establish a baseline level of severity of his skin disorder prior to aggravation. 

A rationale must be provided for any opinion offered. If an opinion cannot be offered without resort to mere speculation, the examiner must indicate why this is the case and indicate what additional evidence, if any, would allow for a more definitive opinion. The examiner should describe what evidence he/she relied upon in reaching his/her opinions relating to whether the Veteran's skin disorder was etiologically related to his active military service. 

3. Obtain a supplemental VA medical opinion to determine the etiology of the Veteran's headache disorder. The claims file should be provided to the examiner. The examiner is asked to provide an opinion as to the following: 

(a) Identify all headache disorders associated with the Veteran. 

(b) Is it at least as likely as not (50 percent or greater probability) that any identified headache disorder manifested during, or as a result of, active military service, to include exposure to contaminants in the water supply at Camp Lejeune? 

(c) Is it at least as likely as not (50 percent or greater probability) that any identified headache disorder was caused by or aggravated by the Veteran's service-connected alopecia universalis or otitis externa disabilities, and/or the combined effects of those disabilities? 

If aggravation of the Veteran's headache disorder by his service-connected disabilities is found, the examiner must attempt to establish a baseline level of severity of his skin disorder prior to aggravation. 

A rationale must be provided for any opinion offered. If an opinion cannot be offered without resort to mere speculation, the examiner must indicate why this is the case and indicate what additional evidence, if any, would allow for a more definitive opinion. The examiner should describe what evidence he/she relied upon in reaching his/her opinions relating to whether the Veteran's headache disorder was etiologically related to his active military service. 

4. Obtain a supplemental VA medical opinion to determine the etiology of the Veteran's vestibular disorder, to include vertigo. The claims file should be provided to the examiner. The examiner is asked to provide an opinion as to the following: 

(a) Identify all vestibular disorders associated with the Veteran. 

(b) Is it at least as likely as not (50 percent or greater probability) that any identified vestibular disorder, to include vertigo, manifested during, or as a result of, active military service, to include exposure to contaminants in the water supply at Camp Lejeune? 

(c) Is it at least as likely as not (50 percent or greater probability) that any identified vestibular disorder was caused by or aggravated by the Veteran's service-connected alopecia universalis or otitis externa disabilities, and/or the combined effects of those disabilities? 

If aggravation of the Veteran's vestibular disorder by his service-connected disabilities is found, the examiner must attempt to establish a baseline level of severity of his skin disorder prior to aggravation. 

A rationale must be provided for any opinion offered. If an opinion cannot be offered without resort to mere speculation, the examiner must indicate why this is the case and indicate what additional evidence, if any, would allow for a more definitive opinion. The examiner should describe what evidence he/she relied upon in reaching his/her opinions relating to whether the Veteran's vestibular disorder was etiologically related to his active military service. 

5. Lastly, obtain a supplemental VA medical opinion to determine the etiology of the Veteran's psychiatric disorder, to include depression and/or anxiety. The claims file should be provided to the examiner. The examiner is asked to provide an opinion as to the following: 

(a) Identify all psychiatric disorders currently found under DSM-V, to include PTSD, depression, and/or anxiety, associated with the Veteran. If no diagnosis is provided, the examiner should indicate why no disorder is being diagnosed. 

(b) Is it at least as likely as not (50 percent or greater probability) that any identified psychiatric disorder manifested during, or as a result of, active military service, to include exposure to contaminants in the water supply at Camp Lejeune? 

(c) Is it at least as likely as not (50 percent or greater probability) that any identified psychiatric disorder was caused by or aggravated by the Veteran's service-connected alopecia universalis or otitis externa disabilities, and/or the combined effects of those disabilities? 

If aggravation of the Veteran's psychiatric disorder by his service-connected disabilities is found, the examiner must attempt to establish a baseline level of severity of his skin disorder prior to aggravation. 

A rationale must be provided for any opinion offered. If an opinion cannot be offered without resort to mere speculation, the examiner must indicate why this is the case and indicate what additional evidence, if any, would allow for a more definitive opinion. The examiner should describe what evidence he/she relied upon in reaching his/her opinions relating to whether the Veteran's psychiatric disorder was etiologically related to his active military service. 

6. Ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND so as to help avoid future remand. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action must be undertaken. See Stegall v. West, 11 Vet. App. 268 (1998). 

7. After completing all indicated development, the appellant's claims should be readjudicated based on the entirety of the evidence. If the benefits sought on appeal are not granted, the appellant should be provided a Supplemental Statement of the Case and afforded the requisite opportunity to respond before the case is remanded to the Board. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
JAMES L. MARCH
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).